IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KELVIN STEWARD                                                                                           PLAINTIFF

v.                                    Case No. 1:22-cv-01047

AIR LIQUIDE ADVANCED
MATERIALS, INC.; and AIR LIQUIDE
ADVANCED MATERIALS LLC                                                                     DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is a motion for Summary Judgment filed by Defendants Air Liquide Advanced Materials, Inc. and Air Liquide Advanced Materials LLC's ("Defendants"). (ECF No. 22). Plaintiff Kelvin Steward ("Plaintiff") has responded. (ECF No. 25). The Court finds the matter ripe for consideration.

**I.   BACKGROUND**

In 2018, Plaintiff began his employment at the facility of nonparty Clean Harbors Environmental Services, Inc. ("Clean Harbors") in El Dorado, Arkansas. (ECF No. 24, at 1). Clean Harbors provides hazardous waste management services, which includes incineration of hazardous waste material, for other companies. *Id*. Plaintiff began his employment at Clean Harbors as a receiver, where he would receive containers of chemicals in the warehouse. *Id*. In this position, Clean Harbors provided Plaintiff with training in handling hazardous waste, which included six months of "job shadowing," computer training, videos, and a "code book" that provided the proper method for processing certain hazardous waste. *Id*. at 2. Clean Harbors also provided monthly safety trainings on topics such as personal protective equipment and how to safely pull samples from materials that had been delivered. *Id*. Clean Harbors required Plaintiff to pass tests to prove the extent of his knowledge on these topics. *Id*. at 2. Plaintiff passed these tests and was then promoted

to the position of receiving chemist at Clean Harbors. *Id*. Plaintiff was responsible for testing samples from waste drums to ensure that the chemicals listed on the waste containers were correctly identified.[1] *Id*. This testing was done before Clean Harbors incinerated the hazardous waste. *Id*. Clean Harbors provided Plaintiff with personal protective equipment to wear while performing his job duties, which included a flame-retardant uniform, safety glasses, steel-toe boots, a mask, and gloves. *Id*.

Defendants hired Clean Harbors as an independent contractor to dispose of hazardous waste. *Id*. at 3. On August 14, 2020, two transport trucks arrived at Defendants' facility in Fremont, California, to pick up and transport a shipment of hazardous waste to Clean Harbors in El, Dorado, Arkansas. (ECF No. 26, at 1). This shipment included the container at issue that was labeled "UN2924, Waste flammable liquid, corrosive, N.O.S. solution (Hexane, Trimethylchlorosilane, Tungsten Chloride), 3, (8), PG II." (ECF No. 24, at 3). Before Defendants shipped the waste containers, their personnel completed a waste material profile sheet created by Clean Harbors. *Id*. The purpose of the profile sheet was to supply Clean Harbors with accurate information regarding the potential hazards of the waste. (ECF No. 26, at 1-2). Defendants gave Clean Harbors an opportunity to review the profile sheet prior to shipping. (ECF No. 24, at 4). While Clean Harbors could propose changes to the profile sheet based on the information Defendants gave them, Defendants retained final say on the information provided on the profile sheet. *Id*. at 3. After final confirmation, Defendants' personnel would typically place a label, provided by Clean Harbors, on the waste container that stated the hazard code and warned of the danger in the container. *Id*. at 4. Under Clean Harbor protocols, all waste containers marked with the hazard code "4.3," which corresponds to "Dangerous When Wet," were sent directly to incineration without being tested. *Id*. at 4.

---

[1] Plaintiff states that there have been occasions where his co-workers noticed that waste containers sent to Clean Harbors contained misidentified contents.

On October 11, 2020, Plaintiff was testing samples in his lab. *Id*. at 5. Clean Harbors had provided Plaintiff with a version of the waste material profile sheet sent by Defendants with the waste material to be incinerated. *Id*. at 5. The profile sheet dictated what protocols Plaintiff would use to test the sample. *Id*. at 6. Plaintiff read the requisite paperwork for the hazardous waste at issue, and then took the lid off the container. *Id*. The hazardous waste immediately ignited when Plaintiff removed the lid. *Id*. The hazardous waste then spilled onto Plaintiff causing severe chemical burns. *Id*.

On July 6, 2022, Plaintiff filed his Complaint against Defendants in Union County Circuit Court. Defendants then filed a Notice of Removal with the state court and removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 2). In his complaint, Plaintiff asserts three claims against Defendants: negligence, absolute liability for engaging in an ultrahazardous activity, and strict product liability. (ECF No. 3, at 4-5). On January 30, 2024, Defendants filed the present summary judgment motion. (ECF No. 22). Plaintiff has responded. (ECF No. 25).

## II. STANDARD OF REVIEW

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

### III. DISCUSSION

Defendants argue that they are entitled to summary judgment on Plaintiff's three claims: (1) negligence for failure to properly warn; (2) absolute liability for engaging in an ultrahazardous activity by delivering the waste to Clean Harbors in a defective condition; and (3) strict product liability for supplying the waste in a defective condition. The Court will address each claim in turn.

#### A. Negligence

To prevail on a claim for negligence under Arkansas law, Plaintiff must establish "that the defendant owed a duty to plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Yanmar Co. v. Slater*, 2012 Ark. 36, at 16, 386 S.W.3d 439, 449 (2012). "The issue of whether a duty exists is always a question of law, not to be decided by a trier of fact. If no duty of care is owed, summary judgment is appropriate." *Royal v. Missouri & N. Arkansas R.R. Co., Inc.*, 857 F.3d 759, 764 (8th Cir. 2017) (citations omitted). "Whether the defendant breached its duty to the plaintiff is a question of fact for the jury to resolve." *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 636 (8th Cir. 2014) (citations omitted). "Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other." *Yanmar*, 2012 Ark. 36, at 16, 386 S.W.3d 439, 449 (2012).

4

"[A]n employer of an independent contractor owes a common law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions." *Royal*, 857 F.3d 759, 764 (8th Cir. 2017) (citations omitted). "This duty, however, 'does not contemplate a duty to warn of obvious dangers which are an integral part of the work the contractor was hired to perform.'" *Id*. (quoting *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 76 S.W.3d 254, 262 (2002)). "The duty of an employer of an independent contractor to use ordinary care or to warn of latent dangers does not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform." *Jackson v. Petit Jean Elec. Co-op.*, 270 Ark. 506, 509, 606 S.W.2d 66, 68 (1980).

Defendants argue that they owed Plaintiff no duty to warn because they hired Clean Harbors as an independent contractor specifically to dispose of their hazardous waste. They note that Clean Harbors, due to the nature of its business, trained its employees to be aware of and deal with flammable and corrosive waste. They also argue that Plaintiff was well trained in his profession and knew the hazardous waste at issue contained flammable materials. Defendants assert that because the purpose of Plaintiff's job was to ensure that companies accurately disclosed the waste material composition, Plaintiff was aware the hazardous waste samples could pose a risk beyond those disclosed.

Plaintiff argues that Defendants owed him a duty to warn of nonobvious dangers. He contends that Defendants failed to properly label the container in question, and thus, the danger was concealed. He also argues that, if the container had been labeled properly with "explosive," on the paperwork, the hazardous waste would not have been tested but instead sent to disposal immediately.

One of the primary services Clean Harbors provides is to handle and test highly dangerous hazardous waste before incineration. Plaintiff was a receiving chemist at Clean Harbors. He was required to pass several tests and courses to be promoted to that position. Testing dangerous hazardous waste is an integral part of Plaintiff's job at Clean Harbors. Plaintiff was aware from his

5

co-workers that sometimes the waste containers were not accurately labeled, and the dangers presented by the hazardous waste could differ from what the label claimed. These obvious dangers were an integral part of Plaintiff's work. Thus, the Court finds that Defendants owed no duty to Plaintiff. Accordingly, the Court finds that there is no genuine dispute of material fact and that Defendant is entitled to summary judgment as a matter of law as to Plaintiff's negligence claim.

### B. Absolute Liability for Engaging in an Ultrahazardous Activity

Under Arkansas law, absolute liability is imposed on those that engage in ultrahazardous activities. *See Mangrum v. Pigue*, 359 Ark. 373, 381, 198 S.W.3d 496, 500 (2004). An activity is ultrahazardous if it "(a) necessarily involves a risk of serious harm to the person or chattels of others which cannot be eliminated by the exercise of the utmost care [a]nd (b) is not a matter of common usage." *Zero Wholesale Gas Co. v. Stroud*, 264 Ark. 27, 31, 571 S.W.2d 74, 76 (1978).

Defendants argue that they were not engaged in any ultrahazardous activity because the waste had already been delivered to Clean Harbors' facility by the time the incident occurred, and they had no control over the hazardous waste. Defendants also argue that they were in no way engaged in the testing or disposal process of the hazardous waste. In response Plaintiff contends that by delivering hazardous waste containers, Defendants are liable for damages. He argues that the delivery of a waste that explodes when exposed to moisture in the air is an ultrahazardous activity. Thus, Plaintiff identifies delivery of the hazardous waste as the ultrahazardous activity Defendants were engaged in.

In support of this contention Plaintiff cites to *Zero Wholesale Gas Co. v. Stroud*. In this case, the Arkansas Supreme Court found it could not find as a matter of law that the delivery of propane gas does not involve a risk of serious injury to persons or damage to property that cannot be eliminated by the exercise of ordinary care. However, in *Zero* the propane gas was in the middle of being delivered when the incident took place. In the case at bar, the waste container was picked up in California on August 14, 2020, driven to Arkansas by a Clean Harbor truck, and dropped off at the Clean Harbors facility, where Plaintiff then attempted to test the waste. The delivery of the waste had

been completed by the time the incident occurred on October 11, 2020, the delivery played no role in the incident. Thus, Defendants were not engaged in an ultrahazardous activity at the time of the incident. Accordingly, the Court finds that there is no genuine dispute of material fact and that Plaintiff's absolute liability claim must also fail as a matter of law.

### C. Strict-Product Liability

A supplier of a product is subject to strict-product liability for harm to a person or to property if: "(1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product; (2) The product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and (3) The defective condition was a proximate cause of the harm to a person or to property." Arkansas Code Annotated § 16-116-101. Under Arkansas Code Annotated § 16-116-202(6), "supplier" is defined as follows: "(A) [A]ny individual or entity engaged in the business of selling a product, whether the sale is for resale or for use or consumption. (B) 'Supplier' includes a retailer, wholesaler, or distributor…"

Defendants argue that they are not suppliers under Arkansas law. They argue that they do not sell their waste, but instead, they pay Clean Harbors to dispose of the waste for them. In response, Plaintiff argues that because one of Defendants' employees says "we supply our work materials to Clean Harbors" and because Defendants "ship[] (or otherwise distribute[]) chemicals to Clean Harbors," Defendants are suppliers. These, however, are nothing more than conclusory statements by Plaintiff. Defendants pay companies like Clean Harbors to take this hazardous waste and dispose of it for them. Defendants are not in the business of selling waste for use or consumption, and it is not a part of their revenue. *See* Restatement (Second) of Torts § 402A, cmt. f. (assigning liability to any person engaged in the business of selling the products for use or consumption, or to those engaged in that activity to generate revenue as more than just an occasional seller). Since Defendants are not in the business of selling or making revenue from the waste, they do not distribute or supply the waste. Defendants are not suppliers, thus they cannot be held liable under strict-product liability.

7

Accordingly, the Court finds that there is no genuine dispute of material fact and that Plaintiff's strict-product liability claim fails as a matter of law.

### IV.   CONCLUSION

For the above-stated reasons, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 22) should be and hereby is **GRANTED**.  This case is **DISMISSED WITH PREJUDICE**.  A judgment of even date shall issue September 17, 2024.

**IT IS SO ORDERED**, this 17th day of September, 2024.

/s/ Susan O. Hickey<br>
Susan O. Hickey<br>
Chief United States District Judge